# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| DONALD LIVERMORE,<br>Plaintiff,<br>v.<br>WELLS FARGO BANK,<br>Defendant. | Case No. 17-cv-03347-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE COMPLAINT WITH LEAVE TO AMEND**<br><br>[Re: ECF 12] |

Plaintiff Donald Livermore ("Livermore") brings this action against Defendant Wells Fargo Bank ("Wells Fargo") for allegedly promising Livermore a loan modification, and failing to act in good faith while handling Livermore's loan modification application. Livermore alleges several violations of the California Homeowner Bill of Rights ("HBOR") and California's Unfair Competition Law ("UCL") as well as breach of the covenant of good faith and fair dealing, negligence, and actual fraud. *See generally* Complaint ("Compl."), ECF 1. Wells Fargo removed the action to this Court based on diversity jurisdiction, and filed a motion to dismiss the Complaint for failure to allege facts sufficient to support a claim. *See* Motion to Dismiss ("Mot."), ECF 12.

The Court attempted to hold a hearing on Wells Fargo's motion to dismiss on two separate occassions. First, on December 7, 2017, counsel for Wells Fargo appeared but counsel for Livermore failed to appear and did not inform the Court why an appearance was not possible. *See* ECF 37. In response to an Order to Show Cause ("OSC"), Livermore's counsel explained that he practices law in Los Angeles and did not believe that he had to appear in person in San Jose for the hearing on a motion in his client's case. *See* ECF 39. The Court dissolved the OSC and Livermore's counsel promptly withdrew from the case. *See* ECF 40, 41. In granting the request to withdraw, the Court informed counsel that he retained the obligation to advise Livermore that his

appearance at the hearing was required. *See* ECF 42. At the time of the rescheduled hearing on Wells Fargo's motion to dismiss on December 14, 2017, Livermore failed to appear. *See* ECF 44.

Pursuant to Civil Local Rule 7-1(b), and as explained on the record on December 14, 2017, the Court takes this matter under submission without oral argument. For the reasons set forth below, Wells Fargo's motion to dismiss is GRANTED WITH LEAVE TO AMEND.

**I.     BACKGROUND**

The following facts are taken from the Complaint and are assumed to be true for the purposes of a motion to dismiss. Livermore lives at 226 Granite Street, Pacific Grove, CA 93950. *See* Compl. ¶ 14. Wells Fargo is the current servicer of Livermore's loan. *Id*. ¶ 7. When Livermore applied for a loan modification review in 2016, Livermore and Wells Fargo "orally agreed" to "undergo through" a loan modification in good faith. *Id*. ¶ 15. Moreover, agents of Wells Fargo assured Livermore that he would qualify for a loan modification if he submitted certain documents. *Id*. ¶ 16. Livermore further alleges that he "was told to continue to be in default on his mortgage payments and to send in all loan documents so Defendant would put him in loan modification review." *Id*. ¶ 20. Livermore submitted financials, current bank statements and updated documents as requested and was put in a loan modification review, but did not receive a denial or acceptance from the review within a reasonable time. *Id*. ¶¶ 19, 21. Rather, Wells Fargo continued to request additional documents and information, and told Livermore that the application remained in review. *Id*. ¶ 22. Livermore alleges that he complied with Wells Fargo's requests and "sent in all documents requested." *Id*. ¶ 23.

Livermore continued to ask about his loan modification application, Wells Fargo's agents told him that the loan modification was still under review but "it was not necessary" for Livermore to pay his mortgage. *Id*. ¶ 25. Livermore alleges that Wells Fargo shut him out of his online account and changed his single point of contact numerous times, making it impossible for him to "obtain status on the review of his loan modification application." *Id*. ¶¶ 27-29. He further claims that Wells Fargo made "ominous outbound robo-calls" regarding his mortgage default. *Id*. ¶ 30.

Livermore never received a letter or any other type of communication from Wells Fargo that his loan modification application was denied, and he believes that his application remains in

2

1 review for a loan modification. *Id.* ¶¶ 31, 36, 37. Wells Fargo's "extremely incompetent and obstructive" conduct has caused Livermore to "potentially" lose his residence. *Id.* ¶ 38. Moreover, Wells Fargo never reached out to Livermore to explore foreclosure alternatives as required under HBOR. *Id.* ¶ 45. Notably, the Complaint does not allege that Wells Fargo ever filed a notice of default or notice of trustee's sale in order to commence the non-judicial foreclosure process, or that the property was ever sold at a trustee's sale. *See generally* Compl.

## II.     LEGAL STANDARD

### A.     Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). However, the Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### B.     Leave to Amend

Under Rule 15(a), a court should grant leave to amend "when justice so requires," because "the purpose of Rule 15 ... [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). A court may deny leave to amend for several reasons, including "undue delay, bad faith, ... [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

## III.    REQUESTS FOR JUDICIAL NOTICE

In connection with its motions to dismiss, Wells Fargo has filed two requests for judicial notice of Deeds of Trust for the property at issue, recorded in the official records of the County of Monterey's recorders office. *See* ECF 13, 25. These documents are properly subject to judicial notice because they are either incorporated by reference into the Complaint or they are official public records. *See* Fed. R. Evid. 201(b)(2); *see also Gamboa v. Trustee Corps & Cent. Mortgage*

*Loan Servicing Co.*, 2009 WL 656285, at *3 (N.D. Cal. Mar. 12, 2009) (taking judicial notice of recorded documents related to a foreclosure sale, including grant deed and deed of trust because "[t]hese documents are central to Plaintiffs' allegations that Defendants were not entitled to initiate a foreclosure sale of their property. These documents are also part of the public record and are easily verifiable.") Accordingly, Wells Fargo's requests for judicial notice are GRANTED.

## IV. DISCUSSION

### A. Subject Matter Jurisdiction

At the outset, Livermore argues in his opposition that Wells Fargo improperly removed this action to federal court, and this Court lacks subject matter jurisdiction because Livermore does not seek damages in excess of $75,000. *See* Opposition to Mot. ("Opp'n") at 1, ECF 19. Although the Court agrees that the proper procedure for a plaintiff to challenge jurisdiction is by a motion to remand, the Court may always *sua sponte* remand a case for lack of subject matter jurisdiction. *Cabriales v. Aurora Loan Servs.*, No. C 10-161, 2010 WL 761081, at *2 (N.D. Cal. Mar. 2, 2010) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction over a case that has been removed to federal court, the case shall be remanded.") (citing 28 U.S.C. § 1447(c)). Therefore, the Court considers whether this action satisfies that amount in controversy requirement for diversity jurisdiction.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart,* 281 F.3d 837, 840 (9th Cir. 2002) (citing *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347 (1977). In actions seeking to prevent foreclosure or challenging the validity of a foreclosure of real property, the value of the object of the litigation is measured by either the value of the underlying loan or the value of the property securing the loan. *See Garfinkle v. Wells Fargo Bank*, 483 F.2d 1074, 1076 (9th Cir. 1973); *see also Cabriales v. Aurora Loan Servs.*, No. C 10-161 MEJ, 2010 WL 761081, at *3 (N.D. Cal. Mar. 2, 2010).

Defendant has met its burden of showing that the amount in controversy exceeds $75,000 under either measure of value. In January 2005, Livermore obtained a loan in the amount of $180,000 from Washington Mutual Bank, FA (the "WaMu Loan"), the repayment of which was

4

secured by a Deed of Trust encumbering real property located at 226 Granite Street, Pacific Grove, California 93950. *See* Request for Judicial Notice ("RJN") Exh. A, ECF 13. In February 2007, Plaintiff refinanced the WaMu Loan by borrowing $900,000 from World Savings Bank ("WSB"). The WSB loan was also secured by a Deed of Trust on the Property. RJN Exh. B. Thus, the Deed of Trust at issue in this case secures a $900,000 loan. There is also no indication that the property itself is worth less than $75,000. Based on the pleadings and matters properly subject to judicial notice, the Court is satisfied that it has subject matter jurisdiction over this action.[1]

### B. Failure to State a Claim

The Court now turns to Wells Fargo's motion to dismiss each of the claims in the Complaint under Rule 12(b)(6). For the reasons that follow, Wells Fargo's motion to dismiss the Complaint is GRANTED WITH LEAVE TO AMEND.

#### 1. UCL Claim

Under the first cause of action, Livermore alleges a violation of California Business and Professions Code § 17200 ("UCL") and California's Homeowner Bill of Rights ("HBOR"). The Court addresses Livermore's UCL cause of action before turning to his allegations regarding violations of HBOR. The UCL defines unfair competition as including "any unlawful, unfair or fraudulent business act or practice." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Company*, 20 Cal.4th 163, 175 (1999). UCL claims "must state with reasonable particularity the facts supporting the statutory elements of the [UCL] violation." *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619 (1993). Wells Fargo argues that Livermore lacks standing to pursue a UCL claim, and, further the Complaint fails to factually allege a violation of any prong of the UCL. *See* Mot. at 9.

To allege standing under the UCL, a plaintiff must plead that he "has suffered injury in fact and has lost money or property as a result of" the defendant's unfair conduct. *Californians For*

---

[1] The Court also agrees with Wells Fargo that on its face, the Complaint alleges monetary recovery in excess of $75,000. Livermore asserts that he has been damaged in the amount of $70,000, but the Complaint also seeks civil penalties under HBOR, which trebles actual damages, and Livermore also seeks restitution, attorney's fees and costs.

5

*Disability Rights v. Mervyn's, LLC*, 138 P.3d 207, 209 (2006); *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011) (plaintiff must show a "causal connection" between the economic injury and the alleged unfair conduct). Despite this requirement, nowhere in the Complaint does Livermore allege that he has suffered economic injury as a result of his reliance on Wells Fargo's unlawful, unfair, or fraudulent business practices. As discussed above, the Complaint does not allege that a notice of default or notice of sale have been recorded, or that a foreclosure sale of the property has occurred or has even been scheduled. Livermore alleges only that Wells Fargo "put her loan in foreclosure." Compl. ¶ 31.[2] This is insufficient to allege an injury-in-fact under the UCL to confer standing.

Livermore rattles off a list of injuries to avoid the fact that he has not alleged a loss of money or property related to foreclosure. *See* Opp'n at 8. He argues that he has suffered "material financial injury in fact" in the form of "loss of Plaintiff's equity, costs and expenses related to protecting Plaintiff's Residence, reduced credit score, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, as well as fees and costs, including, without limitation, attorneys' fees and costs and damages for the inability to get credit." *Id*. From what the Court can decipher from this list, these alleged repercussions do not confer standing under the UCL. *Cordon v. Wachovia Mortg., a Div. of Wells Fargo Bank, N.A.*, 776 F. Supp. 2d 1029, 1039 (N.D. Cal. 2011) (holding that legal expenses do not confer standing under the UCL, concluding that "[u]nder Plaintiff's reasoning, a private plaintiff bringing a UCL claim automatically would have standing merely by filing suit.") Livermore also fails to cite to any authority establishing that these losses are sufficient.

In addition, Livermore has not alleged that any injury to him, including a potential foreclosure on his property, is the result of Wells Fargo's allegedly unfair competition. The SAC pleads on its face that Livermore defaulted on his loan before he applied for a loan modification.

---

[2] The pronoun used to refer to Plaintiff Donald Livermore changes between "he" and "she" throughout the Complaint and Opposition, raising a strong inference that these allegations have been copied and pasted from other pleadings. In addition to other errors throughout the Complaint and briefing, the inconsistent allegations made it difficult for the Court to follow the logical argument underlying Livermore's claims. Any amended complaint should address these deficiencies as well.

*Id.* ¶ 20 ("Plaintiff was told to *continue to be in default* on his mortgage payments"). Livermore has therefore not alleged either economic injury, or any injury resulting from Wells Fargo's conduct, as is required to allege standing under the UCL.

Because the Court finds that Livermore has failed to allege standing, it need not decide whether Livermore has adequately pled a UCL violation under the unlawful, unfair, or fraudulent prongs. However, Livermore's Complaint also appears to be deficient in this respect. To the extent Livermore wishes to proceed with a UCL claim, he must provide factual allegations of unlawful, unfair, or fraudulent conduct. For example, as discussed below, Livermore fails to plead claims for a violation of HBOR or a breach of an oral promise, which renders his claim under the UCL's "unlawful" prong untenable. *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) (holding that "[a] defendant cannot be liable under § 17200 for committing 'unlawful business practices' without having violated another law").

For the foregoing reasons, Wells Fargo's motion to dismiss Livermore's claim for a violation of the UCL is GRANTED WITH LEAVE TO AMEND.

### 2. HBOR Claims

Along with his UCL claim, Livermore's first cause of action asserts a violation of HBOR against Wells Fargo. *See* Compl. ¶¶ 46-78. References to HBOR violations also appear throughout the Complaint in the context of other causes of action. *Id.* ¶¶ 33-37 45, 47-57, 87, 145. Taking effect on January 1, 2013, the California Homeowner Bill of Rights ("HBOR") is a "state law designed to both provide protections for homeowners facing [non-judicial] foreclosure and reform aspects of the foreclosure process." *Johnson v. Bank of Am., N.A.*, No. 14-05053-JSC, 2015 WL 351210, at *3 (N.D. Cal. Jan. 23, 2015) (citing Cal. Civ.Code § 2923.4).

Wells Fargo moves to dismiss Livermore's HBOR claims. The Court's review of the Complaint reveals that no violations of HBOR are sufficiently pled and Livermore does not point to any allegations in the Complaint that support his claims. In fact, Livermore's opposition fails to respond to the majority of Wells Fargo's motion to dismiss the HBOR claims. Livermore also failed to appear at the motion to dismiss hearing on two occasions. Thus, the Court does not have the benefit of any argument or clarification from Livermore on the adequacy of his HBOR

7

allegations. For the reasons that follow, the Court finds the Complaint deficient and GRANTS Wells Fargo's motion to dismiss the HBOR claims WITH LEAVE TO AMEND.

The Complaint contains an allegation that Wells Fargo did not reach out to Livermore to explore foreclosure alternatives in violation of HBOR. *See* Compl. ¶ 45. The relevant provision of § 2923.55 requires a "mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent" to "contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure" before recording a notice of default. Cal. Civ. Code § 2923.55(b)(2).

The Court notes that the Parties refer to different provisions with respect to this argument: Wells Fargo cites to Section 2923.55, while Livermore discusses Section 2923.5. *Compare* Mot. at 4 *with* Opp'n at 5, 8. Neither party addresses the difference between these sections. Section 2923.5 applies only to smaller residential mortgage lenders that, during the immediately preceding annual reporting period, foreclosed on 175 or fewer residential real properties. Cal. Civ. Code §§ 2923.5(g), 2924.18(b); *see also Joy v. Mortg. Law Firm, PLC*, No. 15CV2735 BTM(NLS), 2016 WL 2931129, at *2 (S.D. Cal. May 19, 2016). In contrast, Section 2923.55 applies to larger residential mortgage lenders, which is presumably why Wells Fargo directs its arguments at this section. *See* Cal. Civ. Code § 2923.55. However, both sections contain the requirement that Livermore challenges regarding Wells Fargo's failure to explore foreclosure alternatives. For the following reasons, and regardless of whether section 2923.5 or 2923.55 applies, Plaintiff fails to state a claim under either section.

Livermore argues that Wells Fargo failed to explore foreclosure alternatives "with Plaintiffs before recording the Notice of Default and Notice of Trustee Sale in violation of Civil Code § 2923.5, HBOR, Fannie Mae/Freddie Mac Announcements, and the Home Saver plan guidelines." Opp'n at 5. Livermore's argument in his opposition is dubious and is yet another indication that the Complaint and briefing in this case were copied and pasted from another matter. The Complaint in this action does not allege that a notice of default or notice of trustee sale ever occurred or were even scheduled. Wells Fargo argues that this "glaring omission" renders any § 2923.55 claim premature. *See* Mot. at 5. The Court agrees, and DISMISSES Livermore's claim

8

1 for a violation of § 2923.55 and/or § 2923.5 WITH LEAVE TO AMEND.

Wells Fargo decodes Livermore's Complaint to find other hidden HBOR allegations. *See* Mot. at 5-7. For example, Livermore's allegation that Wells Fargo failed "to establish a single point of contact" (Compl. ¶¶ 28, 57) is premised on Civil Code § 2923.7, which requires Wells Fargo to keep Livermore informed about the status of the loan modification application. See Civ. Code § 2923.7. Section 2923.7 provides that "[u]pon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a 'single point of contact' and provide to the borrower one or more direct means of communication with the single point of contact." Cal. Civ. Code § 2923.7(a). A single point of contact ("SPOC") is defined as "an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described" in the statute. Cal. Civ. Code § 2923.7(e). The statute requires a SPOC to coordinate "receipt of all documents associated with available foreclosure prevention alternatives" and to "[notify] the borrower of any missing documents necessary to complete the application." Cal. Civ. Code § 2923.7(b)(2); *Johnson*, 2015 WL 351210, at *5-6. A SPOC is also required to have "access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative." Cal. Civ. Code § 2923.7(b)(3).

Livermore's sole allegation that his single point of contact changed numerous times is insufficient to plead a cause of action under section 2923.7. The Complaint concedes that Wells Fargo assigned Livermore a single point of contact, which by definition could be a team of personnel, and these agents requested additional financial information from Livermore in order to complete his application. *See* Compl. ¶¶ 22, 28-29, 34-35. Livermore does not address the violation of § 2923.7 in his opposition. Nor does Livermore address Wells Fargo's argument that Livermore's own admissions defeat any alleged violation of another HBOR provision, § 2924.10, for failure to acknowledge receipt of his loan modification application. *See* Mot. at 6:7-12. The Complaint pleads on its face that Livermore's application is "pending" and Wells Fargo continued to request documents regarding the application, making the only plausible inference that Wells Fargo did acknowledge receipt of the application but kept the application under review. *See*

9

Compl. ¶¶ 22, 34-35. Accordingly, the Court GRANTS Wells Fargo's motion to dismiss these HBOR claims WITH LEAVE TO AMEND.

Finally, Livermore does not address the sufficiency of the "dual tracking" allegations in his Complaint. *See* Compl. ¶¶ 33, 57. Among protections provided to home loan borrowers, the HBOR "attempts to eliminate the practice, commonly known as dual tracking, whereby financial institutions continue to pursue foreclosure even while evaluating a borrower's loan modification application." *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1149 (N.D. Cal. 2013). As such, while a borrower's complete application for a first lien loan modification is pending, the mortgage servicer may not record a notice of default. Cal. Civ. Code § 2923.6(c). However, such prohibition against recording a notice of default is triggered only "if the borrower submits a complete application." *Id.* As to whether a loan modification is complete, § 2923.6(h) states that "[f]or purposes of this section, an application shall be deemed 'complete' when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer." Cal. Civ. Code § 2923.6(h).

Wells Fargo argues that Livermore does not allege that he ever submitted a "complete" application, and the protections of section 2923.6 only apply once the borrower submits a "complete" application. Civ. Code § 2923.6(c). *See* Mot. at 6. Livermore ignores this argument in his opposition and did not appear at the hearing to defend this claim. Absent facts showing a complete and timely application, Livermore has not pled a plausible violation of § 2923.6. Livermore's "dual tracking" claim is also premature for the reasons discussed above in connection with § 2923.55: without an allegation that Wells Fargo has commenced foreclosure proceedings by recording a notice of default or notice of trustee's sale, any claim that Wells Fargo is engaging in "dual tracking" is premature. For these reasons, Wells Fargo's motion to dismiss Livermore's claim for a violation of section 2923.6 is GRANTED WITH LEAVE TO AMEND.

### 3. Oral Promise Theory

Although Livermore does not plead a separate cause of action for a breach of an oral contract, several of his claims are premised on the existence and breach of an oral agreement. Livermore defines the contract as Wells Fargo's "oral promise to diligently *review* Plaintiff's loan

10

modification in exchange for updated financial documents and to remain in default." *See* Opp'n at 9; *see also* Compl. ¶¶ 17-18, 39, 71. Specifically, this theory forms the basis of Livermore's claim for a violation of the UCL, discussed above, and his claim for a breach of the covenant of good faith and fair dealing, discussed below. However, the Complaint does not adequately allege the existence of—let alone a breach of—an oral agreement by Wells Fargo.

Once again, Livermore's own admissions prevent a plausible inference that Wells Fargo breached any agreement to "review" Livermore's loan modification. The Complaint alleges that Wells Fargo *did* review the application and asked Livermore for updated financial information. *See* Compl. ¶¶ 22, 24-25, 34-35. Moreover, any argument that the contract included an agreement to "diligently" review the loan modification within an unspecified period of time is too indefinite to create a legally binding contract. *See Price v. Wells Fargo Bank*, 213 Cal.App.3d 465, 483 (1989) (the alleged oral agreement to restructure the borrower's debts was too indefinite to create a legally binding contract). The Court also finds that the alleged conduct by Wells Fargo was not an offer to form a contract but more closely resembles an invitation to apply for a loan modification, which *if accepted by further assent from Wells Fargo* could form a contract between the two parties. *See* Restatement (Second) of Contracts § 26 (1981).

Livermore's oral contract theory is also a non-starter because agreements relating to the modification of a mortgage loan contract must satisfy the statute of frauds. Civ. Code §§ 1624, 1698 and 2922; *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 121 (1971); *Secrest v. Security Nat'l Mortg. Loan Trust 2002-2*, 167 Cal.App.4th 544, 547 (2008). Although it is not clear that Livermore can satisfy the statute of frauds or the other deficiencies discussed above through amendment, the Court will afford him such an opportunity. Given that no foreclosure has occurred or has been scheduled, any amended complaint must also articulate how Wells Fargo's alleged breach of an oral promise resulted in damage to Livermore.

For these reasons, which are largely unopposed and unaddressed by Livermore, the "oral promise" allegations are insufficient to plead a breach of an oral contract on which Livermore can base his UCL or breach of the covenant of good faith and fair dealing claims. Wells Fargo's motion to dismiss Livermore's oral contract claim is GRANTED WITH LEAVE TO AMEND.

11

### 4. Breach of Covenant of Good Faith and Fair Dealing

In his opposition, Livermore does defend his second cause of action for a breach of the covenant of good faith and fair dealing. *See* Opp'n at 9-10. The Complaint pleads that Wells Fargo "orally agreed to review Plaintiff for a loan modification. This agreement contained implied covenant of good faith and fair dealing, as all contracts do." Compl. ¶ 81. Livermore also alleges that Wells Fargo breached the covenant by denying him "the benefits of the oral agreement to review loan modification application" and failing to timely deny or approve his loan modification application. *Id.* ¶¶ 82-84. The Complaint goes on to make legal arguments and cite to a number of cases that seemingly challenge conduct against Bank of America, who is not a defendant in this case. ¶¶ 89-101. These legal arguments are not factual allegations, and thus the Court need not consider them.

"California law, like the law in most states, provides that a covenant of good faith and fair dealing is an implied term in every contract." *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 996 (9th Cir. 2002). "[T]he scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,* 2 Cal. 4th 342, 373 (1992). The elements of a cause of action for breach of the implied covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his/her obligations thereunder; (3) any conditions precedent to defendant's performance occurred; (4) defendant unfairly interfered with plaintiff's right to receive the benefits of the contract; and (5) plaintiff was harmed by defendant's conduct. *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F.Supp.2d 952, 968 (N.D. Cal. 2010).

As discussed above, the Complaint does not allege the existence of a contract—which, according to Livermore, was in the form of an oral promise by Wells Fargo to review Livermore's loan modification application. Compl. ¶ 81. The Complaint therefore fails to state a claim for a breach of implied covenant of good faith and fair dealing. Livermore's argument that this claim is "self explanatory" and "does not require further explanations," is conclusory and not persuasive. *See* Opp'n at 10. Accordingly, the Court GRANTS WITH LEAVE TO AMEND Wells Fargo's motion to dismiss the second cause of action.

### 5. Negligence

Livermore's third cause of action for negligence largely tracks his allegations discussed above. Livermore alleges that although Wells Fargo had no duty to offer or approve a loan modification, once it agreed to undergo the loan modification review process it should have acted in good faith within a reasonable period of time and "thus owes a duty of care as to not harm Plaintiff." Compl. ¶ 103. The elements of a negligence cause of action are (1) legal duty owed to plaintiff; (2) breach; (3) causation; and (4) injury to plaintiff. *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339 (1998).

Although the parties dispute whether Wells Fargo owes a legal duty to Livermore, the third cause of action fails on the independent grounds that Livermore has failed to allege a breach of any alleged duty, causation, and damages.[3] Assuming Wells Fargo owed Livermore a duty of care, Livermore's only theory of breach of that duty seems to be that Wells Fargo failed to approve or deny the loan modification application "in a timely fashion." Opp'n at 12. The Complaint contains no allegations that Wells Fargo incorrectly calculated Livermore's income or mishandled his application in any other way. To the extent Livermore argues that Wells Fargo's review of his loan modification was not timely, he fails to allege any facts regarding when he submitted his original application, when Wells Fargo reached out to him requesting further documents, and when Livermore responded to such requests.

In addition, the negligence cause of action does not adequately plead damages that resulted from Wells Fargo's allegedly negligent conduct. No foreclosure proceedings have commenced in this case, and Livermore has failed to show how he has been injured by an "untimely" review of his loan modification application. Livermore does not address these deficiencies in his opposition, and focuses solely on the element of duty. Wells Fargo's motion to dismiss the negligence cause of action is GRANTED WITH LEAVE TO AMEND.

---

[3] Thus, the Court need not resolve the split in authority on whether a lender owes a duty of care in the loan modification context and whether, as Wells Fargo suggests, *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal.App.4th 941, 948 (1st Dist. 2014) was wrongly decided.

### 6. Fraud

Livermore's fourth cause of action for fraud alleges that Wells Fargo and its agents made fraudulent misrepresentations to Livermore regarding qualifications for the loan modifications, taking advantage of Livermore's financially distressed position and vulnerability to such misrepresentations. Compl. ¶¶ 141-143. The Complaint also vaguely refers to Wells Fargo's concealment of certain information from Livermore in order to keep him in a constant state of fear regarding the loss of his residence. *Id.* ¶ 144.

"The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation; (b) knowledge of falsity; (c) intent to defraud; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). A cause of action for fraud is further subject to the heightened pleading requirements of Rule 9(b), and the party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). When pleading fraud against a corporation, a plaintiff must allege the name (or names) of the person(s) who made the representations, along with "their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991).

The allegations in the Complaint do not meet the heightened pleading requirements of Rule 9(b). Livermore concedes that he is "unable to name the persons who made misrepresentations" but that the Court should ignore this deficiency because "all allegations in the complaint are deemed to be true." Opp'n at 13. The Court cannot ignore the requirement that fraud be pled with particularity. Livermore's assertions that unspecified "agents" told Livermore that he would qualify for a loan modification, and instructed him that it was not necessary to pay his mortgage, are insufficient to meet the heightened pleading standard for fraud claims. *See* Compl. ¶¶ 16, 25. There are also no factual allegations demonstrating that Wells Fargo had knowledge that the statements allegedly made were false or that Wells Fargo had the intent to defraud. Further, Livermore alleges no justifiable reliance on the allegedly false statements (despite his insistence that his reliance is "obvious") or any resulting damages. *See* Opp'n at 12-13. Livermore does not point to any allegations or persuasively address Wells Fargo's arguments as to these elements of a

14

fraud claim.  Accordingly, the Court GRANTS WITH LEAVE TO AMEND Wells Fargo's motion to dismiss the fourth cause of action for fraud.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Wells Fargo's Motion to Dismiss the Complaint is GRANTED WITH LEAVE TO AMEND.  Livermore may file an amended complaint **on or before January 15, 2018.**  Failure to meet the deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal of Livermore's claims with prejudice.

Dated: December 20, 2017

_____
BETH LABSON FREEMAN
United States District Judge